UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNION OF ORTHODOX JEWISH<br>CONGREGATIONS OF AMERICA<br>11 Broadway<br>New York, New York 10004<br><br>        Plaintiff,<br><br>  v.<br><br>Maine's Own Organic Milk Company, L3C.<br>4 Gabriel Dr., Suite 1<br>Augusta, ME  04330<br><br>  Serve on registered agent:<br>  Paul O. Dillon<br>  284 Main St., #1<br>  Corinth, ME  04427<br><br>        Defendant. | Civ. No. 1:12-cv-10648<br><br>**COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |

Plaintiff Union of Orthodox Jewish Congregations of America (the "Orthodox Union") files this Complaint seeking injunctive and monetary relief against Defendant Maine's Own Organic Milk Company, L3C ("MOOMilk") for acts of trademark infringement, false designation of origin, dilution, unfair competition and deceptive trade practices, arising out of MOOMilk's unauthorized use of the Orthodox Union's registered certification mark Ⓤ (the "OU mark") on MOOMilk's products.  Plaintiff alleges as follows:

## PARTIES

1. Plaintiff Orthodox Union is a New York State not-for-profit corporation, with its principal place of business at 11 Broadway, New York, New York  10004.

2. Upon information and belief, Defendant MOOMilk is a Vermont low-profit, limited-liability corporation with its principal place of business at 4 Gabriel Dr., Suite 1, Augusta, ME 04330. MOOMilk is in the business of producing, marketing and distributing certain dairy products within at least the states of Connecticut, Maine, Massachusetts, and Rhode Island.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this dispute arises under the laws of the United States. This Court has jurisdiction pursuant to 28 U.S.C. § 1338(a) and (b), in that this dispute arises under the Lanham Act. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity among the parties and the amount in controversy exceeds $75,000.

4. This Court may exercise personal jurisdiction over MOOMilk because MOOMilk markets and distributes its products within the Commonwealth of Massachusetts.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because MOOMilk is subject to personal jurisdiction in this Judicial District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND OF THE OU MARK

6. The Orthodox Union provides kosher product certifications that are recognized and trusted throughout the world. The word "kosher," in Hebrew, means fit or proper, and is used to describe food items that are prepared in accordance with Jewish dietary laws. The market for kosher foods is sizeable and reaches far beyond those who adhere to the Jewish faith. For example, many Seventh-day Adventists, vegetarians and

health-conscious consumers purchase only kosher foods due to the high standards of quality under which they are produced and manufactured.  Recently, the kosher consumer market was estimated to include more than 8.5 million consumers.

7. Due to the complexity of kosher laws, and the inability of consumers and other purchasers to determine whether a food product is kosher, consumers and other purchasers rely upon the certification of agencies like the Orthodox Union, which provide kosher supervision and guidance.

8. The Orthodox Union is the sole and exclusive owner of the kosher certification mark Ⓤ (the "OU mark").  Since at least 1925, the OU mark has been used on hundreds of thousands of food and food-related products as an indicator that such products have been certified as kosher by the Orthodox Union.  The Orthodox Union has spent considerable money, time and energy promoting its certification services and its OU mark.  The OU mark is the central feature of the Orthodox Union's promotional efforts and has received extensive coverage in print and on television and radio, in religious and dietary-conscious media sources, and also in the general interest media.

9. The OU mark has achieved a high degree of consumer recognition and has become famous as the most widely recognized indicator of kosher foods throughout the world.

10. The OU mark is federally registered, Registration Nos. 636,593 and 1,087,891, and has become incontestable.  True and correct copies of the Certificates of Registration for the OU mark are attached hereto as Exhibit A.

11. For many consumers, the OU mark is synonymous with the Orthodox Union and its certification activities.  Accordingly, the Orthodox Union vigilantly

monitors the authorized and unauthorized use of the OU mark in commerce, in connection with food products and other products and services.

## MOOMILK'S USE OF THE OU MARK

12. Upon information and belief, MOOMilk was incorporated in Vermont on or about August 3, 2009, and registered in Maine as a foreign corporation on or about August 10, 2009. MOOMilk produces organic dairy products that are sold in at least Connecticut, Maine, Massachusetts, and Rhode Island.

13. On or about June 16, 2010, the Orthodox Union learned that MOOMilk was using the OU mark without the Orthodox Union's knowledge or authorization in connection with the marketing and sale of its products. *See* Exhibit B hereto.

14. On June 16, 2010, the Orthodox Union informed MOOMilk by letter (sent by e-mail) that its use of the OU mark was unauthorized and constituted trademark infringement. Exhibit B. The Orthodox Union requested MOOMilk provide "any documentation from the OU that authorizes [MOOMilk] to use the OU trademark." Exhibit B.

15. On June 16, 2010, David Bright, Secretary to the Board at MOOMilk responded by e-mail and requested "information on requirements for using the OU trademark." Exhibit B.

16. On June 16, 2010, by e-mail, the Orthodox Union provided Mr. Bright with contact information to begin the OU certification process. Exhibit B.

17. On June 23, 2010, MOOMilk submitted an application for OU certification. *See* Exhibit C hereto.

18. On December 30, 2010, the initial inspection for OU certification was conducted at the MOOMilk processing facilities, located at Smith Hill Dairy.

19. On January 12, 2011, the Orthodox Union sent, by e-mail, contracts for annual certification and for fees, as well as an invoice for annual certification. *See* Exhibit D hereto. No response to the January 12 contract and invoice was received. On January 20, 2011, the Orthodox Union requested again that MOOMilk execute and return the contracts. *See* Exhibit E hereto.

20. On January 28, 2011, Mr. Bright responded by e-mail, stating that MOOMilk was in financial difficulty and undergoing restructuring and that "as soon as [its] existing inventory [ran] out, which should be in a matter of weeks," the company would cease using the OU symbol. Exhibit E.

21. On February 3, 2011, in response to MOOMilk's suggested continued use of the OU mark until its inventory was exhausted, the Orthodox Union informed Mr. Bright that continued use of the OU symbol constituted trademark infringement, and that "[u]sing up cartons with the OU mark without an agreement with the Orthodox Union is not an option that the Orthodox Union can accept." Further, Orthodox Union asked Mr. Bright to raise the matter at the MOOMilk board meeting scheduled to occur the following Monday, and asked Mr. Bright to respond with a proposed resolution to the matter by February 9, 2011. *See* Exhibit F hereto.

22. On February 3, 2011, Mr. Bright responded that MOOMilk lacked the funds to make any payment for certification that week and stated, "[p]lease be patient with us. If we are able to restructure, I will do my very best to come to some accommodation with you." Exhibit F. By separate e-mail, dated the same day, Mr.

Bright stated that "the first shipment of our new cartons without the OU symbol is set to arrive next week." *See* Exhibit G hereto.

23. On February 4, 2011, Orthodox Union responded that it understood that MOOMilk was "experiencing financial difficulties, but the Orthodox Union cannot allow [MOOMilk] to use the OU mark without an agreement. If the issue is cash flow, the OU might consider quarterly installments." Exhibit F. But Orthodox Union made clear that it "simply cannot permit [MOOMilk] to use the OU mark without an agreement and without paying for the service." Exhibit F.

24. On February 25, 2011, Mr. Bright informed the Orthodox Union that it was "on the verge of a refinancing" and asked if the OU fee could be reduced to "$2,600 for the year 2011." *See* Exhibit H hereto.

25. On April 29, 2011, Mr. Bright informed Orthodox Union that refinancing had been secured and that he would contact the Orthodox Union "on Monday regarding details of how we can proceed with payment." *See* Exhibit I hereto.

26. Since that date, no certification fee has been paid and the certification and fee agreements have not been executed.

27. In late March 2012, it was brought to Orthodox Union's attention that MOOMilk was continuing to use the OU symbol on its dairy products. *See* Exhibit J hereto.

28. As of the date of this Complaint, MOOMilk continues its unauthorized use of the OU mark in the same manner as before, and the company has knowingly and willfully infringed Orthodox Union's valuable trademark rights.

## COUNT I

### Federal Trademark Infringement

29. The Orthodox Union incorporates and realleges the allegations in paragraphs 1-28 of this Complaint.

30. MOOMilk's unauthorized use in commerce of the Orthodox Union's OU mark in connection with the marketing and sale of MOOMilk's products has caused and is likely to cause confusion, or to cause mistake, or to cause deception as to the origin, sponsorship or approval of such goods by the Orthodox Union, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

31. MOOMilk began its offending use of the OU mark without consultation with or notice to the Orthodox Union, and in complete disregard of the Orthodox Union's rights.

32. At least since the date on which it was first contacted by the Orthodox Union, if not substantially earlier, MOOMilk has been using the OU mark in connection with the marketing and sale of MOOMilk's products with knowledge that MOOMilk had no authorization to use the OU mark.

33. MOOMilk has known that the OU mark is a registered certification mark owned by the Orthodox Union since at least June 16, 2010.

34. MOOMilk's conduct has injured the Orthodox Union and kosher consumers who rely on the Orthodox Union and the OU mark as an indicator that a merchant using that mark or a product bearing that mark has been supervised, endorsed, or approved by the Orthodox Union.

## COUNT II

### False Designation of Origin, 15 U.S.C. § 1125(a)

35. The Orthodox Union incorporates and realleges Paragraphs 1 through 34 of this Complaint.

36. MOOMilk's unauthorized use in commerce of the OU mark in connection with the marketing and sale of dairy products constitutes a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact which has caused and is likely to cause confusion, or to cause mistake, or to cause deception as to the affiliation, connection or association of MOOMilk with the Orthodox Union, or as to the origin, sponsorship or approval by the Orthodox Union of MOOMilk's products, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

37. MOOMilk's conduct has injured the Orthodox Union and kosher consumers who rely on the Orthodox Union and the OU mark as an indicator that a merchant using the mark or a product bearing the mark has been supervised, endorsed, or approved by the Orthodox Union.

## COUNT III

### Dilution of Famous Mark Under § 43(c) of Lanham Act, 15 U.S.C. § 1125(c)

38. The Orthodox Union repeats and incorporates Paragraphs 1 through 37 of this Complaint.

39. The OU mark is a famous mark under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), in that the mark is distinctive, has been used for many years in many

locations throughout the world and is widely recognized, has been widely advertised and publicized, and has not been used by any person or entity other than the Orthodox Union.

40. After the OU mark became famous, MOOMilk began using the mark in a manner that causes dilution of the distinctive quality of the mark.

41. Consumers familiar with the OU mark have recognized the OU mark in the marketing of MOOMilk's products, and have been misled to conclude that MOOMilk, or its products, are affiliated with or endorsed by the Orthodox Union.

42. MOOMilk's conduct has caused injury to the Orthodox Union and to kosher consumers who associate the OU mark with MOOMilk's products under the mistaken belief that those products are affiliated with, endorsed by, or manufactured under the supervision of the Orthodox Union.

## COUNT IV

### Common Law Unfair Competition and Trademark Infringement

43. The Orthodox Union incorporates and realleges Paragraphs 1 through 42 of this Complaint.

44. By its wrongful actions as described above, MOOMilk has violated and infringed the Orthodox Union's common law rights in its certification mark, and has competed unfairly with the Orthodox Union under the common law of the Commonwealth of Massachusetts.

45. MOOMilk's conduct amounts to deceit. By passing off its goods as being affiliated with or endorsed by the Orthodox Union, MOOMilk's conduct is likely to deceive or confuse the kosher consuming public, and thereby generate profits that, but for said deception, MOOMilk would not have received.

46. MOOMilk's continuing distribution and sale of such products with the unauthorized OU mark, after being notified that it was prohibited from doing so constitutes willful infringing activity that has caused and will continue to cause immediate, substantial and irreparable injury to the Orthodox Union, including irreparable injury to the OU mark, its reputation and its goodwill. In addition, MOOMilk's infringing acts have caused the Orthodox Union to suffer damages.

## COUNT V

### Engaging in Unfair and Deceptive Trade Practices in Violation of Massachusetts General Laws Chapter 93A §§ 2 & 11.

47. The Orthodox Union incorporates and realleges Paragraphs 1 through 46 of this Complaint.

48. By its wrongful actions as described above, MOOMilk has willfully violated Massachusetts General Law 93A §§ 2 and 11.

49. MOOMilk has engaged in unfair trade practices by producing, marketing, distributing, and selling products carrying the OU mark despite lack of certification or other authorization to use the mark, thereby infringing on the Orthodox Union's trademark and diluting that mark.

50. MOOMilk has engaged in its unfair and deceptive trade practices intentionally, knowingly, and willfully, for the purpose of obtaining undue economic advantage and wrongly depriving the Orthodox Union of the benefits of its trademark, for the unwarranted and improper benefit of MOOMilk.

## COUNT VI

### Trademark Dilution in Violation
### of Massachusetts General Laws Chapter 110H §14.

51. The Orthodox Union incorporates and realleges Paragraphs 1 through 50 of this Complaint.

52. The OU mark is a strong and distinctive mark that has been used for many years in many locations throughout the world and is widely recognized, has been widely advertised and publicized, and has not been used by any person or entity other than the Orthodox Union.

53. The OU mark has become and continues to be famous and distinctive through prominent, long, and continuous use in commerce, including commerce within the Commonwealth of Massachusetts.

54. After the OU mark became famous, MOOMilk began using the mark in a manner that causes dilution of the distinctive quality of the mark.

55. Consumers familiar with the OU mark have recognized the OU mark in the marketing of MOOMilk's products, and have been misled to conclude that MOOMilk, or its products, are affiliated with or endorsed by the Orthodox Union.

56. MOOMilk's conduct has caused injury to the Orthodox Union and to kosher consumers who associate the OU mark with MOOMilk's products under the mistaken belief that those products are affiliated with, endorsed by, or manufactured under the supervision of the Orthodox Union.

WHEREFORE, the Orthodox Union respectfully requests that this Court:

(1) Issue a preliminary injunction and a permanent injunction enjoining MOOMilk from further infringement of the OU mark and any other unauthorized use of the OU

mark, and directing MOOMilk to take immediate corrective action to remove from the marketplace any MOOMilk products which bear the unauthorized OU mark, and to terminate any marketing, advertising, or other activities that involve unauthorized use of the OU mark;

(2) Order MOOMilk to render an accounting to the Orthodox Union of all of MOOMilk's unauthorized uses of the OU mark;

(3) Order MOOMilk to render an accounting to the Orthodox Union of all sales, and profits gained from the sale of products, bearing or sold in connection with MOOMilk's use of an unauthorized OU mark;

(4) Award damages to the Orthodox Union in an amount to be determined at trial;

(5) Award damages to the Orthodox Union in an amount of three times the amount of the Orthodox Union's damages or MOOMilk's profits, whichever is greater, pursuant to 15 U.S.C. § 1117, and/or award statutory damages to the Orthodox Union pursuant to 15 U.S.C. § 1117(c) for MOOMilk's intentional and willful use of a counterfeit OU mark;

(6) Based upon the intentional and willful conduct of MOOMilk, award exemplary and punitive damages to the Orthodox Union in an amount to be determined at trial;

(7) Declare this to be an "exceptional" case within the meaning of 15 U.S.C. § 1117(a), and award the Orthodox Union its costs and attorneys' fees incurred in connection with this action under 15 U.S.C. § 1117(a), and as otherwise permitted by law;

(8) Award to the Orthodox Union attorneys fees and costs of this action and pre- and post-judgment interest on all sums due from MOOMilk; and

(9) Award such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

The Orthodox Union respectfully requests trial by jury on all claims so triable.

Dated: April 11, 2012.   BINGHAM McCUTCHEN LLP

      /s/ Charles L. Solomont_____
Charles L. Solomont
carl.solomont@bingham.com
One Federal St.
Boston, MA  02110-1726
Telephone:     617-951-8000

*Attorney for Plaintiff Union of Orthodox Jewish Congregations of America*

David J. Butler
david.butler@bingham.com
2020 K St., NW
Washington, D.C.  20006
Telephone:     202-373-6723

*Of Counsel for Plaintiff Union of Orthodox Jewish Congregations of America*